IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JAN 1 3 2006

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| GARDEN CITY BOXING CLUB, INC., as Broadcast Licensee of the September 13, 2003, De La Hoya/ Mosley Event, | § § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIVIL ACTION NO. B-05-262 |
| 1) BASILIO REYES, Individually and d/b/a VACHE'S TAVERN a/k/a VACHE'S LOUNGE; and 2) MARIA JULIA REYES, Individually and d/b/a VACHE'S TAVERN a/k/a VACHE'S LOUNGE, | § § § § § § § § | |
| **Defendants.** | § § | |

## OPINION & ORDER

BE IT REMEMBERED that on January *12*, 2006, the Court **GRANTED** Plaintiff's Motion for Final Default Judgment.  Dkt. No. 8.

I.    **Background**

This case arises out of the alleged unlicensed interception and exhibition of a boxing match (the "Event") by Defendants.  *Id.* at 2.  The boxing match, which was a championship match between Oscar De La Hoya and Shane Mosley, took place on September 13, 2003.  *Id.*  Plaintiff held the exclusive rights to exhibit and sublicense the Event in Texas, by virtue of a licensing agreement with the Event's promoter.  *Id.* at 6; Dkt. No. 8, Ex. A, at 2; Dkt. No. 8, Ex. A-1.  Plaintiff entered into licensing agreements with individual establishments for the commercial exhibition of the Event.  Dkt. No. 8, at 6; Dkt. No. 8, Ex. A, at 2, 3.  Plaintiff supplied the Event to its licensees by way of a scrambled signal sent to the licensees via satellite and cable communication systems.

-1-

Dkt. No. 8, at 6; Dkt. No. 8, Ex. A, at 2, 3.  Plaintiff alleges that Defendants "intercepted
and received or assisted in the interception and receipt of the transmission of the Event,
and broadcast or assisted in the broadcast of the Event to the patrons of the
Defendants' Establishment."  Dkt. No. 8, at 7.  Plaintiff asserts that Defendants willfully
intercepted and exhibited the Event without authority to do so.  *Id.*

Plaintiff filed suit against Defendants on September 26, 2005, alleging causes of
action under 47 U.S.C. § 553, 47 U.S.C. § 605, and Texas Civil Practice and Remedies
Code §§ 123.002, 123.004.  Dkt. No. 1.  Defendants were served on October 20, 2005
and October 27, 2005, respectively.  Dkt. Nos. 4, 5.  Defendants never answered or
responded in any way.  An entry of default was made against Defendants on December
15, 2005.  Dkt. No. 10.  Defendants finally made some response to this suit on
December 20, 2005, by filing a letter with the Court.[1]  Dkt. No. 11.  Plaintiff's Motion for
Final Default Judgment and Defendants' letter of December 20 are presently before the
Court.  Dkt. Nos. 8, 11.

## II.    Default Judgment

Plaintiff filed, pursuant to Federal Rule of Civil Procedure 55(b)(2), for default
judgment against Defendants on December 8, 2005.  Dkt. No. 8.  Defendant had not
appeared in this case at that time.  Entry of default was made by the Clerk of this Court
a week later, on December 15, 2005, at which time Defendants still had not appeared in
any manner.  Dkt. No. 11.  Therefore, prior to deciding whether to grant default
judgment, the Court must determine what effect Defendants' letter of December 20,
2005 has on the previous entry of default in this case and on the issue of whether

---

[1]This Court recognizes that Defendants in this case are unrepresented by
counsel and are therefore acting pro se, and it attempts, in the interest of justice, to be
lenient with pro se litigants when possible.  However, the Court also recognizes that
ignorance of the law is not an excuse and that pro se litigants, although held to a lower
standard for pleadings, must follow the law and procedural rules.  *See* Bryan v. United
States, 524 U.S. 184, 194, 196, 199 n.33 (1998); United States v. Wilkes, 20 F.3d 651,
653 (5th Cir. 1994); Johnson v. City of Slidell, No. Civ.A.04-1851, 2005 WL 2050291, *2
(E.D. La. 2005); Ryan v. Roberts, No. Civ.A. 301CV1627K, 2003 WL 21418774, *2
(N.D. Tex. 2003); Dudley v. Holiday Inn, No. 96-2330, 1996 WL 559993, *2 (E.D. La.
1996); Jarrell v. Tisch, 656 F.Supp. 237, 239 (D.D.C. 1987).

Defendants should be afforded a hearing regarding default judgment.

## A. Entry of Default

This Court finds that Defendants' letter can be reasonably interpreted as a motion to set aside the entry of default and will consider the letter as such. Defendants assert several arguments for why the entry of default should be set aside in this case. First, as to Defendant Basilio Reyes, Defendants state that (1) he is not the proper defendant, (2) he is not, nor has he ever been, the owner of the bar in question, (3) his father owned the bar and displayed the fight to its patrons, and (4) he did not know this suit "would still be going forward with the wrong defendant." Dkt. No. 11. Second, as to Defendant Maria Julia Reyes, Defendants argue that (1) she did not know what was occurring at the bar and (2) she did not take over the lounge until after her husband passed away. *Id.* Defendants request a hearing. *Id.*

Even interpreting Defendants' letter as a motion to set aside the entry of default, Defendants must meet the standard of "good cause shown" required by Rule 55(c). Fed. R. Civ. P. 55(c) (2005). It is well established that the Federal Rules of Civil Procedure include a strong preference for determining the outcomes of cases on the merits, and not on the basis of defaults. Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 936 (5th Cir. 1999); S. Distrib. Co. v. Technical Support Assocs., Inc., 105 F.R.D. 1, 3 (S.D. Tex. 1984). Furthermore, if the responding party acts with reasonable promptness after the motion for default is filed, alleges a meritorious defense, and has not defaulted due to willfulness, default judgments should usually be set aside. Tate v. Riverboat Servs., Inc., 305 F.Supp.2d 916, 919 (N.D. Ind. 2004). In addition, the standard for granting relief from an entry of default "is considerably less stringent than" the standard for granting relief from a default judgment. Whitman v. United States Lines, Inc., 88 F.R.D. 528, 529–30 (E.D. Tex. 1980). Finally, the Fifth Circuit has established three factors to consider when determining whether to set aside default judgments or entries of default: "(1) the extent of prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of the defendant's conduct." *Rogers*, 167 F.3d at 938–39.

Despite the preference for resolving cases on the merits, however, this Court

-3-

finds that Defendants have not met their burden of establishing good cause for setting aside the entry of default.  Defendants fail to provide any allegations showing that they have meritorious defenses, and their own letter confirms that their conduct was culpable.

First, Defendants' proffered defenses lack merit.  Defendant Basilio Reyes states that he is the wrong defendant and that he has never owned the bar.  Dkt. No. 11.  The problem with these arguments is that his statement that he is the wrong defendant is a conclusory statement that has no evidentiary value, and even if he was not the owner he can still be liable if he assisted in the unlicensed reception or transmission of the Event in any manner.  *See, e.g.*, 47 U.S.C. § 605(a) (2000).  Both Defendants also state that they did not know what was going on at the bar.  This defense does present some merit—if they were unaware of the illicit activities, then they most likely did not either perform those activities or assist in their performance.[2]  Nonetheless, Defendants cannot show a meritorious defense, because Defendants admit that they are now the managers, supervisors, and/or owner(s) of the bar.  Dkt. No. 11.  By taking over possession and control of an ongoing business, Defendants received both the benefits and the liabilities associated with that business.[3]  *See* Russell v. Sunamerica Sec., Inc., 962 F.2d 1169, 1175–76 (5th Cir. 1992); Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 174 (5th Cir. 1985).  Therefore, Defendants are liable for the late Basilio Reyes' conduct even if they did not participate in it, by virtue of their control of his business.

---

[2]This defense, even if true, does not necessarily mean that Defendants would not be liable.  For instance, Defendants may have helped purchase a device to unscramble the transmission of the Event or have assisted in setting up the method used to unscramble the signal.  However, this defense does have more than a modicum of merit.

[3]It is clear that Maria Julia Reyes has no meritorious defense.  In fact, Defendants' letter firmly establishes Maria Julia Reyes' liability—the letter states that the late Basilio Reyes "showed the La Hoya/Mosley fight" and that she took over the ownership of the bar.  Dkt. No. 11.  Thus, she is liable along with the bar itself.
This issue is somewhat murky as it applies to Basilio Reyes.  However, because Basilio Reyes still fails to establish good cause based on the third factor, the Court will not go into further analysis on this point.

-4-

Second, Defendants' letter shows that their failure to plead or otherwise defend in this case was willful.  Defendants admit that they received service of the lawsuit and that they were aware of the pending lawsuit.  Dkt. No. 11.  Defendant Basilio Reyes states that he did not answer because he did not believe the suit would go forward.  *Id*. As ignorance of the law is not a defense, this does not establish excusable neglect, mistake, inadvertence, or surprise.  *See Bryan*, 524 U.S. at 194, 196, 199 n.33.  Rather, Defendant made a conscious decision not to respond, based on an erroneous assumption regarding the status of this case and an erroneous understanding of the law.  Although this may be unfortunate, it does not establish good cause.  Defendant Maria Julia Reyes provides no reason for her failure to respond to this suit.  Dkt. No. 11. Therefore, the Court may only assume that it too was a willful decision not to respond. Thus, this Court finds that Defendants' letter is insufficient to warrant a decision to set aside the entry of default.

### B. Need for a Hearing

Federal Rule of Civil Procedure 55(b)(2) states: "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages . . ., the court *may* conduct such hearings or order such references *as it deems necessary and proper* . . . (emphases added)." Furthermore, a defendant who has appeared in an action is entitled to notice of an application for default judgment at least three days before a hearing on the application. Fed. R. Civ. P. 55(b)(2) (2005).

In this case, the Court finds that no hearing is necessary.  Defendants did not appear until well after both the entry of default and the Plaintiff moved for default judgment.  Dkt. Nos. 8, 10, 11.  Plaintiff seeks statutory damages, not actual damages. Dkt. No. 8.  Furthermore, Plaintiff offers uncontroverted evidence, in the form of affidavits and documentary evidence, establishing both the Defendants' liability and the amount of damages.  Dkt. No. 8; Dkt. No. 8, Exs. A, A-1, A-2, B.

Additionally, Defendants' letter does not change this determination.  The letter provides no evidence and is accompanied by no evidence.  The allegations in the letter admit that the late Basilio Reyes exhibited the Event, that the Defendants succeeded

-5-

him such that they now control and operate the bar, and that the bar is their alter ego. Dkt. No. 11 ("Now under her and my supervision the business is diffrent [sic] but not sucessfull [sic]. We are barely getting by.").[4] Thus, the letter provides no evidence to contradict Plaintiff's evidence, and the allegations also do not provide any substantial contradictions to Plaintiff's testimony.

Finally, Defendants have not produced good cause for setting aside the entry of default and have adduced no evidence which would suggest a hearing is necessary. Dkt. Nos. 10, 11. Thus, this Court finds that no hearing is necessary and that a hearing by affidavit is sufficient, and it will proceed based on the evidence before it. *See* Cablevision Sys. N.Y.C. Corp v. Torres, No. 02 Civ. 7602 (AJP), 2003 WL 22078938, *3 (S.D.N.Y. 2003); Top Rank Inc. v. Tacos Mexicanos, No. 01CV5977, 2003 WL 21143072, *4 (E.D.N.Y. 2003).

## C. Default Judgment

The Court finds that default judgment should be granted in this case. Plaintiff has provided evidence sufficient to establish violations of 47 U.S.C. § 553, 47 U.S.C. § 605, and Texas Civil Practice and Remedies Code §§ 123.002, 123.004. Plaintiff was the only broadcast licensee of the Event in Texas. Dkt. No. 8, Ex. A, at 2; Dkt. No. 8, Ex. A-1. Plaintiff therefore had the exclusive right to sublicense the Event to commercial establishments throughout Texas. Plaintiff provided transmission of the Event by way of a scrambled signal, and only its authorized licensees were provided the means to unscramble it. Dkt. No. 8, Ex. A, at 2–3. Defendants' bar was not an authorized licensee, and Defendants did not purchase the right to display the Event. *Id.* at 3. Despite this, Defendants intercepted the Event, unscrambled it, and exhibited it to their patrons. *Id.* Thus, Defendants violated each of these three statutes, and default judgment should be granted.

## III.  Damages

The Court must now determine the appropriate award of damages. Under the

---

[4]Although it is unclear whether or not Basilio Reyes has an ownership interest in the bar, it is clear that it is his alter ego as much as his mother's.

federal statutes, Plaintiff is entitled to choose between actual damages and statutory damages. *See, e.g.*, 47 U.S.C. § 605(e)(3)(C)(i) (2000). Under the Texas statute, an aggrieved party is entitled to a minimum statutory award, plus any additional actual damages in excess of the statutory amount and punitive damages. Tex. Civ. Prac. & Rem. Code § 123.004 (2005).

In this case, Plaintiff only requests damages under 47 U.S.C. § 605. Dkt. No. 8, at 10–11, 18-19, 22, 24, 27. Plaintiff requests statutory damages of $10,000 and additional damages of $50,000. *Id.* at 27. The Court finds that the conduct alleged in this case is not sufficiently egregious to warrant this amount of damages. *See Tacos Mexicanos*, 2003 WL 21143072, at *5. There is no evidence that Defendants' establishment has engaged in cable piracy on other occasions, and it only displayed the Event on two televisions. Dkt. No. 8, Ex. A-2. There is also no evidence that Defendants advertised about the Event in advance or charged an entrance fee because of the Event. Finally, the Court finds it should impose a damages award that "deters but does not destroy." Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999). Therefore, this Court will consider what damages are appropriate under these circumstances.

### A. Statutory Damages

Courts have employed several methods to determine an appropriate amount of damages in cable piracy cases. *See, e.g.*, Entm't by J&J, Inc. v. Al-Waha Enters., Inc., 219 F.Supp.2d 769, 776 (S.D. Tex. 2002). This Court finds that the appropriate method to use in this case is for damages to be assessed on a per-patron basis. Other courts have held that $50 per patron was a reasonable amount in cases similar to this one, and this Court finds that amount to be appropriate here. *See Tacos Mexicanos*, 2003 WL 21143072, at *4, and cases cited therein. Therefore, based on the evidence that there were 77 patrons in Defendants' bar, this Court finds that a statutory damages award of $4,000 is appropriate in this case.[5] Dkt. No. 8, Ex. A-2.

___

[5]This amount is based on a calculation of 77 patrons * $50 per patron = $3,850; this number is rounded up to $4,000 to arrive at the damages in this case.

-7-

## B. Willfulness

The Court finds that this award should be further increased based on the willfulness of the violation. Although there is no direct evidence that Defendants acted willfully, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F.Supp.2d 955, 959 (E.D. Wisc. 2001) (quoting Time Warner Cable v. Googies Luncheonette, Inc. 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)). Furthermore, the Event was rebroadcast to the bar's customers, meaning that this act of cable piracy was for the purpose of direct or indirect commercial advantage. Id.; Al-Waha Enters., Inc., 219 F.Supp.2d at 776–77. Thus, the act was willful under the statute, and an increase in the penalty is appropriate. 47 U.S.C. § 605(e)(3)(C)(ii) (2000).

In determining the appropriate size of the increase in damages, Courts have generally multiplied the original damages amount by some factor to determine the additional amount. See, e.g., Tacos Mexicanos, 2003 WL 21143072, at *5 (awarding four times); Al-Waha Enters., Inc., 219 F.Supp.2d at 777 (tripling the damages award). Courts have used factors ranging anywhere from 3 to 7 times the damages amount. See, e.g., Lauratex Textile Corp. v. Allton Knitting Mills, Inc., 519 F.Supp. 730, 733 (S.D.N.Y. 1981) (awarding seven times). This Court finds that a factor of three times the damages amount is appropriate in this case, based on the facts and circumstances of this case.[6] Thus, the damages award will be increased to $12,000.

## C. Attorney's Fees

Under 47 U.S.C. § 605, a prevailing plaintiff is entitled to an award of costs and reasonable attorney's fees. Therefore, Plaintiff requests an award of attorney's fees based on a contingency fee of 33% of the damages award. Dkt. No. 8, at 24. As an alternative, Plaintiff also requests attorney's fees based on a lodestar amount. Dkt. No. 8, Ex. B, at 3. This Court must determine which method to use for calculating the appropriate award of attorney's fees and then determine the appropriate amount.

---

[6]Again, the Court reiterates that the evidence in this case does not establish a particularly egregious violation. See supra § III.

The Court finds the contingency fee approach to be wholly unreasonable and inappropriate. Plaintiff's own evidence establishes that Plaintiff's attorneys expended only four hours on this case. *Id.* This Court finds an award of attorney's fees of more than $5,000 to be excessive for this amount of work.[7] Thus, the Court will not utilize the contingency fee method.

However, the Court finds the lodestar method to be entirely reasonable and appropriate. *See Torres*, 2003 WL 22078938, at *4. Plaintiffs have established that $250 per hour is a reasonable fee and that four hours were expended on this matter. Dkt. No. 8, Ex. B, at 3–4. Therefore, the Court finds that an award of attorney's fees in the amount of $1,000 is appropriate.

Finally, the Court "declines to award contingent attorney's fees and costs [for possible future events]. [Plaintiff] may apply for such an award if and when such fees and costs are incurred." Nat'l Satellite Sports, Inc. v. Carmen-Garcia, No. 3:01-CV-1799-D, 2003 U.S. Dist. LEXIS 10315, *7 (N.D. Tex. 2003).

## IV.    Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Final Default Judgment and **ORDERS** that default judgment be entered against Defendants. Dkt. No. 8. Furthermore, the Court **ORDERS** that Plaintiff, Garden City Boxing Club, recover the following from Defendants:

    (1) $4,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

    (2) $8,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

    (3) $1,000 in attorney's fees; and

    (4) $250 in costs.

The above sums, totaling $13,250, shall bear interest at the rate of 4.25% per annum from the date of judgment until paid. Finally, Plaintiff's award is limited to this single recovery, for which Defendants Basilio Reyes and Maria Julia Reyes shall be held

---

[7]The Court also notes that, under Plaintiff's requested amount of damages, the contingency fee basis would produce attorney's fees of $20,000. The Court cannot fathom how attorney's fees of $5,000 *per hour* could be considered "reasonable." Thus, the Court concludes that the contingency fee basis is inappropriate in this case.

jointly and severally liable, along with their bar, Vache's Tavern a/k/a Vache's Lounge. *See Tacos Mexicanos*, 2003 WL 21143072, at *6.  All other relief not expressly granted herein against Defendants is **DENIED**.

DONE at Brownsville, Texas, this 12th day of January, 2006.

Hilda G. Tagle
United States District Judge